### EMILY M. MAGUIRE *vs.* TAX COMMISSIONER.

Middlesex. March 4, 1918. — June 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Tax,* On income. *Constitutional Law.*

The effect of the provision of the income tax law contained in St. 1916, c. 269, § 14, in connection with the final sentence of St. 1909, c. 490, Part I, § 23, cl. 5, of the general tax law, is that the income from property held in trust in another State by a trustee, who there is taxed for it, is exempted from taxation to the recipient of the income resident in this Commonwealth.

Under St. 1916, c. 269, §§ 2, 11, and St. 1909, c. 490, Part I, § 23, cl. 5, income received by a resident of this Commonwealth from intangible property held for his benefit by a trustee resident in another State and not taxable in that State is subject to an income tax.

The imposition by St. 1916, c. 269, called the income tax law, of a tax upon income received by a resident of this Commonwealth from intangible property held for his benefit by a trustee resident in another State and not taxable in that State is valid and does not violate any guaranty of the Fourteenth Amendment to the Constitution of the United States.

It here was *pointed out* that, whether a tax on the income received in Massachusetts by the beneficiary of property held in trust in another State and not taxed there be regarded as a tax on the right of the beneficiary to receive the income or as a tax on the income when received, in either event it is a property tax.

PETITION, filed in the Superior Court on October 5, 1917, under St. 1916, c. 269, § 20, by a beneficiary receiving income from a trust established by the will of Matilda P. MacArthur, late of Philadelphia in the State of Pennsylvania, and held as trustee by

the Girard Trust Company, a corporation having its usual place of business in that city, appealing from the refusal of the Tax Commissioner to abate a tax of $29.98 alleged to have been assessed illegally on the sum of $499.63 received by the petitioner as such income.

The case came on to be heard before *Fox*, J., who at the request of the parties, without making any decision, reported it under St. 1917, c. 345, for determination by this court upon the petition and the answer admitting the allegations of the petition. The material facts are stated in the opinion.

The case was submitted on briefs.

*R. W. Hale & J. M. Maguire*, for the petitioner.

*H. C. Attwill*, Attorney General, & *W. H. Hitchcock*, Assistant Attorney General, for the respondent.

RUGG, C. J. The petitioner, a resident of Cambridge in this Commonwealth, prays in accordance with St. 1916, c. 269, § 20, for the abatement of a tax alleged to have been assessed illegally. The tax was levied upon income received during 1916 from a trust established by the will of a deceased resident of Pennsylvania. That trust now is and always has been administered at Philadelphia in that State by the Girard Trust Company, a Pennsylvania corporation having no place of business in Massachusetts, under appointment by a court of competent jurisdiction in that State. The trust fund consists of mortgages, stocks and bonds. All the securities, documents and other evidences of title of the property belonging to the trust at all times since its creation have been kept physically in the exclusive custody of the trustee in Philadelphia. Some of these securities were taxable and taxed to the trustee in Pennsylvania. The rest were not so taxed or taxable under the laws of Pennsylvania. Of these latter there were bonds of three corporations exempted from direct taxation to the trustee because the debtor corporations under a Pennsylvania statute paid to that State a tax for and in behalf of the owners of the bonds. Certificates of the Southern Railway Equipment Trust were exempt from such taxation because all payments under them were rental for the use of tangible personal property, which in fact had a *situs* outside of Massachusetts, and shares of stock in two corporations were exempt from such taxation because the corporations paid to the State a tax on their capital stock.

The income received by the petitioner from the securities taxed to the trustee in Pennsylvania is not subject to taxation under our income tax law. It is provided by § 9 of St. 1916, c. 269 (hereafter referred to as the income tax law), that "The income received by estates held in trust by trustees, any one of whom is an inhabitant of this Commonwealth or has derived his appointment from a court of this Commonwealth, shall be subject to the taxes assessed by this act to the extent that the persons to whom the income from the trust is payable, or for whose benefit it is accumulated, are inhabitants of this Commonwealth. The tax shall be assessed to such of the trustees as are inhabitants of the Commonwealth. Such part of the income of intangible personal property held in trust as is payable to or accumulated for persons who are not inhabitants of the Commonwealth, shall be exempt from the taxes imposed by this act. If an inhabitant of this Commonwealth receives income from one or more executors, administrators or trustees, none of whom is an inhabitant of this Commonwealth or has derived his appointment from a court of this Commonwealth, such income shall be subject to the taxes assessed by this act, according to the nature of the income received by the executors, administrators or trustees." This section standing by itself is broad enough to include the income in question. But this section must be read in connection with the other terms of the income tax law in order to gather the complete intent of the General Court. These broad provisions of § 9 are cut down by § 11. Reference is made in the earlier part of that section to the exemption from taxation under St. 1909, c. 490, of "property, whether held by an executor, administrator, trustee or otherwise," after the income tax law shall take effect; and a later sentence, so far as material, is in these words: "This act shall not be construed to impose a tax upon any . . . person in respect to income derived from property exempted from taxation by provisions of law existing prior to the passage of this act." It is manifest from the phraseology of § 11 of the income tax law, that it was intended to apply to trustees so far as they may be within the general scope of any portion of it, because, as has been pointed out, they are named in the first part of the section.

The reference in the sentence quoted from § 11, to the provisions of law existing at that time, manifestly is to the general

tax law, St. 1909, c. 490, Part I, § 23, cl. 5, as amended. It there was provided that "All personal estate, within or without the Commonwealth, shall be assessed to the owner in the city or town in which he is an inhabitant on the first day of April, except as provided in Part III and in the following clauses of this section: . . . Fifth, Personal property held in trust by an executor, administrator or trustee, except as provided in section thirty-seven of Part III, the income of which is payable to another person, shall be assessed to the executor, administrator or trustee in the city or town in which such other person resides, if within the Commonwealth; and if he resides out of the Commonwealth it shall be assessed in the place where the executor, administrator or trustee resides; and if there are two or more executors, administrators or trustees residing in different places, the property shall be assessed to them in equal portions in such places, and the tax thereon shall be paid out of said income. If the executor, administrator or trustee is not an inhabitant of the Commonwealth, it shall be assessed to the person to whom the income is payable, in the place where he resides, if it is not legally taxed to an executor, administrator or trustee under a testamentary trust in any other State." The final sentence of that clause has direct reference to the taxation of trust property held by a foreign trustee for the benefit of a resident *cestui que trust.*

It is of no consequence in this connection that this sentence does not occur in Part I, § 5 of the general tax law, which relates exclusively to exemptions of persons and property from taxation. It is none the less an exemption from taxation. It is described as "An act to exempt property . . . from double taxation" in the title of St. 1894, c. 490, by which it first became a part of our statute law. The substance of the provision is an exemption from taxation. The purpose of this provision doubtless was to avoid duplicate taxation of the same property in two different sovereignties. It cannot be presumed that the same legislative purpose did not continue when the tax on incomes was substituted for certain other kinds of property tax. Moreover, § 5 of Part I does not purport to include all exemptions, for other sections of the general tax law relate to the same subject. See, for example, Part I, §§ 6, 8, 16, 17, 19. The classification of exemptions in *Watson* v. *Boston,* 209 Mass. 18, 22, does not pur-

port to be comprehensive. While the income tax law made a complete change in the basis of taxation of intangible property, there is nothing to indicate that it was designed to return to duplicate taxation of trust property even though it might be in degree less burdensome than was illustrated in *Hunt* v. *Perry,* 165 Mass. 287. No reason is perceived for narrowing the plain exemption of § 11 of the income tax law and excluding from its operation the clear exemption of the final sentence of Part I, § 23, cl. 5 of the general tax law. It is more consonant with the canons of statutory interpretation to construe the income tax law as a consistent and harmonious whole, the apparently absolute provisions of one section being modified by the equally explicit limitations of another section, than by construction to import into one section an exception which is not readily discernible there and which in this particular would involve recurrence to a kind of double taxation heretofore expressly discarded by the Legislature.

The effect of § 11 of the income tax law in connection with the final sentence of § 23, cl. 5 of the general tax law, both already quoted, is that property held in trust in a sister State by a trustee there taxed therefor, is expressly exempt from taxation to the *cestui que trust* here resident. These lucid words are precisely applicable to circumstances like those here disclosed. There is no reason why these words should not be given their natural effect. A reason for this exemption under the existing income tax law is not far to seek. In the ordinary case of direct individual ownership of intangible securities there is no taxation except at the domicil of the owner, because in most instances taxation of that kind of property is based on the maxim *mobilia sequuntur personam.* There are some exceptions even to this rule. For instance, debts for purposes of taxation may under appropriate conditions have a *situs* at the residence of the debtor as well as of the creditor. *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, 354. So also may shares of stock in corporations by express statute have a taxable *situs* at the domicil of the corporation as well as at the residence of the shareholder. *Corry* v. *Mayor & Council of Baltimore,* 196 U. S. 466. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51. But the general rule still obtains that intangibles have a taxation *situs,* and in practice usually their only taxation *situs,* at the residence of the owner. *Fidelity &*

*Columbia Trust Co.* v. *Louisville*, 245 U. S. 54. This being so, the imposition of an income tax such as is levied by our income tax law is based on the theory that the income tax is the only tax which in justice ought to be imposed in respect of such ownership, especially because in general the property represented by such intangibles contributes to the support of government in some other form. See *Hawley* v. *Malden*, 232 U. S. 1, 13 and *Simplex Electric Heating Co.* v. *Commonwealth*, 227 Mass. 225.

But the ownership of property held in trust in a sense is divided. The legal title is in the trustee, but the entire beneficial interest is in the *cestui que trust*. In such cases it is quite possible that the property may be taxed to the trustee as the legal owner in the State of his residence, regardless of the residence of the *cestuis que trust*. That has been our own law. *Welch* v. *Boston*, 221 Mass. 155. *Crocker* v. *Malden*, 229 Mass. 313. It doubtless was felt to be inequitable in such instances to compel the *cestui que trust* to pay another tax to this Commonwealth. Although our statute is now changed in this respect by § 9 of the income tax law, so that this Commonwealth no longer taxes the resident trustee for intangible personal property held for the benefit of non-residents, yet the reason for the exemption from taxation of the resident *cestui que trust* whose trustee, resident in another State, has there paid a lawful tax in respect of the trust property, still remains in principle. It is only in degree that its importance is diminished by the change in the scheme and rate of taxation.

This result receives some confirmation from the provision in the concluding paragraph of § 5 of the income tax law, to the effect that "income derived from property not subject to taxation under chapter four hundred and ninety of the acts of the year nineteen hundred and nine and acts in amendment thereof and in addition thereto . . . shall not be taxed under this act." It is manifest from what has been said already that the property from which this income is derived was not subject to taxation under St. 1909, c. 490, Part I, § 23, cl. 5.

The validity of the portion of the tax, assessed upon income from securities not taxable and not taxed to the trustees under the laws of Pennsylvania, must be considered next. It is not contended that income from this source is not taxable according to the terms of our income tax law. The position of the petitioner

upon this branch of the case is that in this respect the income tax
law is unconstitutional in that it operates to take her property
without due process of law, and in other respects violates her
fundamental rights.

It is plain that if the intangible property, legal title to which is
held by the trustee in Pennsylvania, were owned in absolute owner-
ship by the *cestui que trust* resident here it legally would be taxable
to her here. That is settled so far as concerns the Constitution of
this Commonwealth, by *Hawley* v. *Malden*, 204 Mass. 138, and
the many cases there collected, and so far as the Federal Consti-
tution is concerned, by the same case on writ of error in 232 U. S. 1.
The question, whether the nature of the right of a *cestui que trust*
in a trust held in a sister State is such as to be subject to taxation
here, was before this court in *Hunt* v. *Perry*, 165 Mass. 287. In
that case the beneficiary of a trust fund, created under the will
of a deceased resident of Maine, held in that State by trustees
there resident and appointed by its courts, was taxed as a resident
of this Commonwealth for her interest in the trust. It was said
by Allen, J., speaking for the court (p. 291): "The statute under
consideration rests on the ground that the *cestuis que trust* re-
siding here have a beneficial interest in the trust fund which is
valuable, and that they are in effect the equitable owners thereof.
An interest of this kind is property, which the Legislature may
subject to taxation. *Bates* v. *Boston*, 5 Cush. 93. *Williston
Seminary* v. *County Commissioners*, 147 Mass. 427. *Hathaway* v.
*Fish*, 13 Allen, 267. . . . The defendants contend that the statute,
if such is its true construction, is unconstitutional. . . . This argu-
ment, however, is met by the suggestions already made, that the
*cestui que trust* is here, and his ownership or title is here, namely,
the right to the income of the trust fund. The fact that the corpus
of the trust fund is held by trustees who live elsewhere, and who
hold under a will proved and allowed elsewhere, does not take
away the power of the Legislature to subject the interest of the
*cestuis que trust* to taxation here, if they live here." Other ex-
pressions are used in the course of that opinion, some of which
cannot stand in the light of decisions of the United States Supreme
Court in *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S.
194, *Delaware, Lackawanna & Western Railroad* v. *Pennsylvania*,
198 U. S. 341, *Louisville & Jeffersonville Ferry Co.* v. *Kentucky*,

188 U. S. 385, all rendered since *Hunt* v. *Perry.* But it does not seem to us that the soundness of the ground of that decision stated in the words quoted has been shaken by subsequent decisions. The exception to the general principle that personal property is taxable at the domicil of the owner seems to be rather strictly confined to chattels, live stock and other property which possesses a visible corporeal existence and which have acquired a manifest and permanent *situs* in another State. *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63. These decisions of the United States Supreme Court relied on by the petitioner do not appear to us to have wrought such ruin with the long established practice as to taxation in this Commonwealth as she contends. Indeed the soundness of the reasoning of the opinion in *Hunt* v. *Perry*, 165 Mass. 287, already quoted, appears to us to be sustained in principle by the most recent pronouncement of that court upon the subject in *Fidelity & Columbia Trust Co.* v. *Louisville*, 245 U. S. 54. That case had to do with the validity of a tax assessed by a municipality in Kentucky upon one of its residents upon moneys deposited in a bank in Missouri, derived from business there conducted and standing to his credit alone. It was conceded that these deposits were subject to taxation in Missouri. In the opinion upholding the validity of the tax in Kentucky it was said: "The present tax is a tax upon the person, as is shown by the form of the suit, and is imposed, it may be presumed, for the general advantages of living within the jurisdiction. These advantages, if the State so chooses, may be measured more or less by reference to the riches of the person taxed. Unless it is declared unlawful by authority we see nothing to hinder the State from taking a man's credits into account. But so far from being declared unlawful, it has been decided by this court that whether a State shall measure the contribution by the value of such credits and choses in action, not exempted by superior authority, is the State's affair, not to be interfered with by the United States, and therefore that a State may tax a man for a debt due from a resident of another State. *Kirtland* v. *Hotchkiss*, 100 U. S. 491. See also *Tappan* v. *Merchants' National Bank*, 19 Wall. 490. . . . The notion that a man's personal property upon his death may be regarded as a *universitas* and taxed as such, even if qualified, still is recognized both here and in England. *Bullen* v. *Wisconsin*, 240 U. S. 625, 631.

*Eidman* v. *Martinez,* 184 U. S. 578, 586.  *Attorney General* v. *Napier,* 6 Exch. 217.  It has been carried over in more or less attenuated form to living persons, and the general principle laid down in *Kirtland* v. *Hotchkiss, supra,* has been affirmed or assumed to be law in every subsequent case. . . . It was admitted to apply to debts in *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 205.  It is unnecessary to consider whether the distinction between a tax measured by certain property and a tax on that property could be invoked in a case like this.  *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 146, 162 *et seq.*  Whichever this tax technically may be, the authorities show that it must be sustained."  That reasoning appears to us to be equally applicable to the facts here disclosed.  *State Tax on Foreign-Held Bonds,* 15 Wall. 300.  *Metropolitan Life Ins. Co. of New York* v. *New Orleans,* 205 U. S. 395, 399.  *Burke* v. *Wells,* 208 U. S. 14, 23.  *Walker* v. *Jack,* 31 C. C. A. 462, (88 Fed. Rep. 578).  It is of no consequence in this aspect whether the tax is levied on income in truth received by the resident taxpayer from intangible property held for his benefit by a trustee resident in a sister State or on intangible property owned by the taxpayer but all in fact kept by him in a sister State.  There is not apparent to us any difference in principle between the two cases.

It is clearly implied by what was said by Mr. Justice Gray in *Dallinger* v. *Rapello* or *Rapallo,* 14 Fed. Rep. 32; *S. C.* 15 Fed. Rep. 434, that a tax against the beneficiary in the State of his residence for his interest in a trust held by a non-resident trustee in one of the sister States of his residence would be valid.  See also *Putnam* v. *Middleborough,* 209 Mass. 456, 457, and *Brown* v. *Fletcher,* 235 U. S. 589, 599.  "Although the right which the mortgage transfers in the land covered thereby is not the legal title, but only an equitable interest," *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421, 431, nevertheless it is plain that the debt with this equitable interest as security may be regarded for the purpose of taxation as situated at the domicil of the creditor.  *Kirtland* v. *Hotchkiss,* 100 U. S. 491.

The trustee in Pennsylvania holds simply the legal title.  He is possessed of the property in question solely for the benefit of the *cestui que trust.*  The latter "is the real, substantial and beneficial owner of an estate which is held in trust as distinguished from the trustee in whom the mere legal title is vested."

*Larkin* v. *Wikoff*, 5 Buch. 462, 474, affirmed on this point in 7 Buch. 589. The *cestui que trust* has important legal rights respecting the trust fund which are personal to her. They are rights in the nature of property. They cannot be taken away from her by arbitrary or irrational procedure. They attach to her person wherever she goes. One of these is the right to receive the income. That is a property right. The income when received is property. The tax here in question is a property tax. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 531, 532. Whether it be regarded as a tax on the right of the *cestui que trust* or a tax on the income as received, in either event a property tax is permissible. Of necessity a tax on income requires time as an element in its calculation. It must be levied on the income received during a period of time. It is not necessary that income be reinvested before it can be taxed. It may be spent as received and yet be subject to taxation. The contention of the petitioner in principle reaches much further than to the facts of the present case. In its logical application and extension it apparently would render invalid taxes on income from annuities, certificates in partnerships, associations and trusts and perhaps other sources, originating in sister States, and not having a place of business in this Commonwealth. Of course, if the principle is sound, its disturbing effect is no argument against its recognition and adoption. But a contention which in its results would seriously cripple the practical operation of any comprehensive system of State income taxation has no presumption in its favor and ought not to be adopted except because of compelling considerations. We perceive no such requirement as to the tax here in controversy. Whatever may be the effect of *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, 581; *S. C.* 158 U. S. 601, and *Brushaber* v. *Union Pacific Railroad*, 240 U. S. 1, 16, 17, upon the nature of the tax here in question under the Constitution of the United States, no binding decision appears to us to require that this tax be declared invalid. There is nothing inconsistent with the conclusion here reached in *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600.

The income tax is measured by reference to the riches of the person taxed actually made available to him for valuable use during a given period. It establishes a basis of taxation directly proportioned to ability to bear the burden. It is founded upon

the protection afforded to the recipient of the income by the government of the Commonwealth of his residence in his person, in his right to receive the income and in his enjoyment of the income when in his possession. That government provides for him all the advantages of living in safety and in freedom and of being protected by law. It gives security to life, liberty and the other privileges of dwelling in a civilized community. It exacts in return a contribution to the support of that government measured by and based upon the income, in the fruition of which it defends him from unjust interference. It is true of the present tax, as was said by Chief Justice Shaw in *Bates* v. *Boston,* 5 Cush. 93 at page 99, "The assessment does not touch the fund, or control it; nor does it interfere with the trustee in the exercise of his proper duties; nor call him, nor hold him, to any accountability. It affects only the income, after it has been paid by the trustee" to the beneficiary.

Our income tax law is founded upon interstate comity in this regard. It taxes only residents of this Commonwealth in respect of property in which they have a beneficial interest. It exempts resident trustees, although manifestly within the legal scope of its power, from taxation upon funds for the benefit of non-resident *cestuis que trust.* But it taxes resident *cestuis que trust* in respect of income actually received by them from trust property held in other States and not there taxed. This principle of taxation, just in itself and based upon recognition of like rights in sister States and manifestly aimed at the elimination of duplicate taxation upon the same property in different States, does not seem to us to violate any guaranty of the Fourteenth Amendment to the Federal Constitution.

No distinction in principle is manifest to us touching the income derived from the several classes of intangible securities held by the trustee and not taxed in Pennsylvania. See, in this connection, *Hawley* v. *Malden,* 232 U. S. 1, 13, and *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58.

An abatement of the tax as assessed is granted in accordance with the terms of the statute in the sum of $16.86.

*So ordered.*