*Municipal Court of the City of Boston*

No. 396710

## JENNIE VENDITTO

### v.

## SEBASTIAN BRUNO

(April 20 — May 31, 1956)

*Gillen, J.* This is an action of contract to recover a balance due on a note that the defendant signed as a co-maker.

The plaintiff commenced this action by a trustee writ and attempted to attach by trustee process the "funds, monies and properties standing in the name of Anna Bruno or A. Bruno and belonging to the defendant, Sebastian Bruno", in the Rockland-Atlas National Bank of Boston.

As a result of said attachment, the Rockland-Atlas National Bank of Boston, the trustee named in said writ, filed an answer showing the sum of $727.00 being the balance in said bank in the account of Anna Bruno (A. Bruno) with Sebastian Bruno signing under power of attorney.

After said action was entered in court, Anna Bruno filed a motion to dissolve the attachment under the provisions of G. L. c. 223, §114. The said motion

reads: "Anna Bruno, also known as A. Bruno, respectfully moves that the attachment of her funds in the Rockland-Atlas National Bank of Boston, made under a trustee writ, in this action, be dissolved and assigns as reason therefor, that said funds are not the property of, and do not belong to the defendant Sebastian Bruno, but belong solely to her."

At the hearing before (*Fox, J.*) on the motion to dissolve the attachment there was evidence tending to show that no certificate as required by G. L. c. 209, §10 (Married Woman's Certificate) was filed by anyone prior to said attachment; that Anna Bruno was the owner of the business conducted at 124 Commercial Street, Boston, under the name of A. Bruno; that the bank account at the Rockland-Atlas National Bank, which was attached by the plaintiff, was a bank account used in the normal operation of the business. It was agreed that Sebastian and Anna Bruno are husband and wife.

After the hearing on the motion to dissolve the attachment and before argument, Anna Bruno filed requests for rulings of law. The requests with the action of the trial judge are hereinafter set forth:

1. That the relationship between A. Bruno (Anna Bruno) and the Rockland-Atlas National Bank of Boston was that of Creditor and Debtor. *Allowed.*

2. That the funds in the name of A. Bruno (Anna Bruno) at the Rockland-Atlas National Bank of Boston at the time of the service of the Trustee process was a credit due from the Rockland-Atlas National Bank of Boston to said A. Bruno (Anna Bruno). *Allowed.*

3. That the funds of A. Bruno (Anna Bruno) on deposit with the Rockland-Atlas National Bank of Boston at the time of the service of the Trustee process was not "personal property employed in such business" that was liable to be attached as the property of the husband and to be taken on Execution against him, within the meaning of General Laws (Ter. Ed.) c. 209, s. 10. *Denied.*

The trial judge found the following facts: "I find that Anna Bruno, the wife of the defendant Sebastian Bruno, was the owner of the business conducted at 124 Commercial Street, Boston, Massachusetts, on the date of the attachment, that the 'Married Woman's Certificate' required by Chapter 209, Section 10, was filed by her subsequent to the date of attachment, and that the debt due her from the Trustee, Rockland-Atlas National Bank of Boston, was due as the result of the deposit of monies used in the operation of the business. - - -"

The trial judge denied Anna Bruno's motion to dissolve the attachment. Anna Bruno claims to be aggrieved by the action of the trial judge.

If the bank account here had been originally in the name of Sebastian Bruno there is no question an attachment of said bank account by trustee process could have been made. G. L. c. 246, §20.

The question arises whether by force of G. L. c. 209, §10, the bank account of Anna Bruno can be attached by trustee process as the property of the husband. We think it can.

No certificate as set forth in G. L. c. 209, §10, was filed by anyone prior to the attachment. Under the statute either Anna Bruno or her husband could have filed this certificate (Married Woman's Certificate).

By reason of the failure to file said certificate "the personal property employed in such business shall be liable to be attached - - - - - and to be taken on execution against him - - - - -" G. L. c. 209, §10.

The evidence warranted a conclusion that said bank account was used in the normal operation of the business and the trial judge so found.

The legislation contained in G. L. c. 209, §10, entitled "Separate Business Certificate" was originally passed in 1862. It was aimed to prevent fraud on the part of husband and wife where the wife carried on business on her own separate account.

It was said in *Allen v. Clark,* 190 Mass. 556, 559 "Under this state of the law it sometimes, perhaps frequently, happened that a business was being carried on apparently by the husband and yet, when his creditor (whether the debt was contracted by the husband in his apparent business or otherwise) undertook to collect the debt by an attachment of the property used in the business, he was confronted with the claim on the part of the wife that the business was really carried on by her and not by her husband; and, inasmuch as her separate property could not be taken for his debts, the attachment would not stand."

There have been several changes made in this legislation over the years but it comes down to us today reading in part: "If such certificates are not so recorded - - - - the personal property employed in such business shall be liable to be attached as the property of the husband - - - -." G. L. c. 209, §10. We think the legislature intended to include a bank account employed in the business as well as the other personal property employed in such business in the category of property subject to attachment in this situation. We do not think the legislature intended to permit the attachment of goods on the shelf or monies in the cash drawer of the business but deny the right of attachment because the money employed in the business was deposited in a bank.

The bank account is generally the life blood of the business and it is hard to conclude that the legislature would allow this to escape attachment where the aim of the legislature was to prevent fraud.

We recognize that in ordinary commercial banks the legal relation between the bank and a general depositor is that of debtor and creditor. *Bachrach v. Commissioner of Banks,* 239 Mass. 272, and that money deposited in a commercial bank does not remain the property of the depositor upon which the bank has a lien only, but it becomes the absolute

property of the bank and the bank is merely a debtor to the depositor in an equal amount. *National Mahaiwe Bank v. Peck*, 127 Mass. 298. But even in the case of a commercial account upon the death of a depositor the executor or administrator lists said account as a personal asset of the estate in the inventory filed in the Probate Court.

The depositor has an interest in said account at all times regardless of where the legal title to the money rests. And we think the legislature intended to include this interest in the category of personal property subject to attachment.

It was said in *Williston Seminary v. County Commissioners of Hampshire*, 147 Mass. 427 at 430: "The word 'property' - - - - extends to every species of valuable right and interest." see *Gray v. Central Mass. Railroad*, 171 Mass. 116 at 125.

The depositor has a personal right in a bank account in a commercial bank and he can enforce that right in a court of law. *Assessors, Boston v. Boston Pilots' Relief Soc.*, 311 Mass. 232 at 237.

We think the property right in the bank account was personal property and by force of Gen. Laws (Ter. Ed) chap. 209, sec. 10, it could be attached as the property of the defendant.

No error appearing, the order is

*Report dismissed.*

Robert Robinson, for the plaintiff.

Ruben H. Klainer, for the defendant.